STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

14-665

KEITH WILLIAM MACKMER

VERSUS

THE ESTATE OF FRANK ANGELLE, JR.,
NATIONAL UNION FIRE INSURANCE COMPANY,
AND LEXINGTON INSURANCE COMPANY

**\*\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2011-2928, DIVISION "H"
HONORABLE RONALD F. WARE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\*\***

JAMES T. GENOVESE
JUDGE

**\*\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Jimmie C. Peters, and James T. Genovese, Judges.

REVERSED IN PART;
AFFIRMED IN PART;
AND REMANDED.

David H. Hanchey
The Hanchey Law Firm
Post Office Box 2210
Lake Charles, Louisiana 70602
(337) 436-5551
COUNSEL FOR PLAINTIFF/APPELLANT:
    Keith William Mackmer

**Todd A. Townsley**
**Jordan Z. Taylor**
**The Townsley Law Firm**
**3102 Enterprise Boulevard**
**Lake Charles, Louisiana 70601**
**(337) 478-1400**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**Keith William Mackmer**

**Christopher P. Ieyoub**
**Plauché, Smith & Nieset, L.L.C.**
**1123 Pithon Street**
**Post Office Drawer 1705**
**Lake Charles, Louisiana 70602**
**(337) 436-0522**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**National Union Fire Insurance Company and**
**Lexington Insurance Company**

**Sidney Wallis Degan, III**
**Emily R. Adler**
**Degan, Blanchard & Nash**
**400 Poydras Street, Suite 2600**
**New Orleans, Louisiana 70130**
**(504) 529-3333**
**COUNSEL FOR INTERVENOR/APPELLEE:**
**New Hampshire Insurance Company**

**GENOVESE, Judge.**

In this suit for personal injuries, Plaintiff, Keith William Mackmer, appeals the trial court's grant of summary judgment in favor of Defendants, National Union Fire Insurance Company of Pittsburgh, Pennsylvania,[1] and Lexington Insurance Company. Mr. Mackmer also avers that the trial court erroneously denied his motion for partial summary judgment on the issue of liability.[2] For the following reasons, we find that the trial court erred in granting Defendants' motion for summary judgment as there remain genuine issues of material fact. For the same reasons, we affirm the trial court's denial of Plaintiff's motion for partial summary judgment. Accordingly, we reverse in part, affirm in part, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On December 9, 2010, Mr. Mackmer was a guest passenger in a vehicle owned by Moncla Coil Tubing Well Service, LLC (Moncla) and driven by Frank Angelle, Jr., when the vehicle was involved in an accident with an oncoming vehicle on Highway 27, between Sulphur and DeQuincy, Louisiana. Dustin Bass and Timothy Bass were also occupants in the vehicle when the accident occurred, and the men were all employed by Moncla.

Mr. Angelle died as a result of the injuries he sustained in the accident, and Mr. Mackmer sustained serious personal injury. Mr. Mackmer instituted this

---

[1]This Defendant is erroneously named in Mr. Mackmer's petition as National Union Fire Insurance Company.

[2]Generally, pursuant to La.Code Civ.P. art. 968, the denial of a motion for summary judgment is an interlocutory judgment from which an appeal may not be taken. However, when there is also an appeal from a final judgment, such as a trial court's grant of summary judgment, an appellate court may also review the interlocutory ruling. *See In re Succession of Carlton*, 11-288 (La.App. 3 Cir. 10/5/11), 77 So.3d 989, *writ denied*, 11-2840 (La. 3/2/12), 84 So.3d 532.

personal injury action, naming as Defendants the estate of Mr. Angelle[3] and the liability insurers of the Moncla vehicle Mr. Angelle was operating at the time of the accident, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and Lexington Insurance Company (collectively Lexington).

In its Answer, Lexington denied liability and affirmatively alleged its entitlement to tort immunity pursuant to La.R.S. 23:1032. On September 11, 2013, Mr. Mackmer filed a motion for partial summary judgment on the issue of liability. Therein, Mr. Mackmer asserted that the undisputed facts established that Mr. Angelle was not in the course and scope of his employment with Moncla when the accident happened; accordingly, Lexington could not prevail on its affirmative defense of tort immunity. Lexington filed a cross-motion for summary judgment, likewise on the issue of course and scope and its immunity from the claims asserted by Mr. Mackmer. Thereafter, Mr. Mackmer filed a motion to strike: (1) portions of Lexington's asserted undisputed facts; (2) what he contended were new defenses raised by Lexington in its brief to the trial court;[4] and (3) the affidavit of Leon Charles Moncla, Jr. submitted by Lexington in support of its motion.

Following a hearing, the trial court denied Mr. Mackmer's motion to strike relative to the undisputed facts set forth by Lexington. Mr. Mackmer's motion to strike the affidavit of Mr. Leon Moncla was denied in part and granted in part, resulting in the word "directly" being stricken by the trial court. Substantively, on the cross motions for summary judgment, the trial court denied Mr. Mackmer's motion and granted Lexington's motion, finding that Mr. Angelle was in the course and scope of his employment with Moncla when the accident happened and that

---

[3]The claims against the estate of Mr. Angelle were dismissed pursuant to a Consent Judgment signed February 20, 2014.

[4]This portion of Mr. Mackmer's motion to strike was later voluntarily dismissed.

2

Lexington could not be held liable to Mr. Mackmer due to the tort immunity provided to co-employees. A concomitant judgment was signed by the trial court on February 21, 2014. From said judgment, Mr. Mackmer appeals.

## ASSIGNMENTS OF ERROR

Mr. Mackmer presents the following assignments of error for our review:

1. Did the trial court err by admitting an affidavit into evidence that the affiant admitted in his deposition was not based on personal knowledge and was clearly contradicted by the affiant's deposition testimony?

2. Did the trial court err by taking judicial notice of the destination to which [Mr.] Angelle was headed at the time of the wreck and the purpose of the trip?

3. Did the trial court err in denying [Mr.] Mackmer's motion for summary judgment as to [Lexington's] affirmative defense of worker's [sic] compensation tort immunity, thus barring [Mr.] Mackmer's claim, even though there was: no admissible evidence concerning whether driver [Mr.] Angelle and his occupants were on their way to work when the wreck occurred; no evidence demonstrating the purpose of the trip; no valid evidence concerning why Angelle was driving; clear testimony that [Mr.] Angelle's "travel pay" was not connected to travel; [Mr.] Angelle was not paid *per diem* for the date of the accident; [Mr.] Angelle's employment contract did not provide or guarantee him transportation[,] and [Mr.] Angelle was not required to drive under the terms of his employment?

4. Alternatively, did the trial court err by granting [Lexington's] cross-[m]otion for [s]ummary [j]udgment in light of the undisputed facts listed in Issue no. 3?

5. Did the trial court err in admitting evidence submitted by [Lexington] and allowing [Lexington] to proceed over [Mr.] Mackmer's timely objections and motion to strike concerning these issues when [Lexington's] [m]otion and evidence violated the procedural requirements of Louisiana District Court Rules 9.9 and 9.10 and Louisiana Code of Civil Procedure Article 966 as well as the mandatory time limits under these provisions for filing summary judgment evidence?

6. Did the trial court err by continuing the hearing for the parties' cross-motions for summary judgment thereby allowing [Lexington] the opportunity to file a corrected consolidated memorandum and to supplement [its] exhibits in an attempt to remedy (albeit unsuccessfully) [its] violations of Louisiana District

3

Court Rules 9.9 and 9.10 and Louisiana Code of Civil Procedure Article 966?

## LAW AND DISCUSSION

In his appeal, Mr. Mackmer has assigned both procedural and substantive errors of the trial court. For the reasons that follow, we find merit to his contention that the trial court erred in granting Lexington's motion for summary judgment on liability. Accordingly, we pretermit addressing the procedural errors raised by Mr. Mackmer as unnecessary in reaching our conclusion herein.

This court recently discussed in detail an appellate court's review of a trial court's grant of summary judgment stating as follows:

> In the case of *Jagneaux v. Frohn*, 11-461, pp. 2-3 (La.App. 3 Cir. 10/5/11), 74 So.3d 309, 310-11, this court discussed the standard of review and the law applicable to motions for summary judgment as follows:
>
>> Our Louisiana Supreme Court has instructed us on the standard of review relative to a motion for summary judgment as follows:
>>
>>> A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.*, [06-363 (La.11/29/06)], 950 So.2d 544, [*see* La.Code Civ.P.] art. 966. A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.* whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, [06-1181 (La.3/9/07) ], 951 So.2d 1058[ ]; *King v. Parish National Bank*, [04-337 (La.10/19/04) ], 885 So.2d 540, 545; *Jones v. Estate of Santiago*, [03-1424 (La.4/14/04) ], 870 So.2d 1002[.]
>
> *Samaha v. Rau*, 07-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83 (footnote omitted).

4

*Chastant v. Chastant*, 13-1402, pp. 5-6 (La.App. 3 Cir. 4/23/14), 138 So.3d 801, 805, *writ denied*, 14-1508 (La. 10/22/14), __ So.3d ___. Additionally, in *Chastant*, this court noted the following instruction of our supreme court:

> A "genuine issue" is a "triable issue." *Toups v. Hawkins*, 518 So.2d 1077, 1079 (La.App. 5th Cir.1987) (citing *Brown [v. B & G Crane Service, Inc.*, 172 So.2d 708, 710 (La.App. 4 Cir.1965)]). More precisely, "[a]n issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Summary judgment is the means for disposing of such meretricious disputes." W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 481 (1983). In determining whether an issue is "genuine," courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. *Simon v. Fasig-Tipton Co. of New York*, 524 So.2d 788, 791 (La.App. 3d Cir.), *writs denied*, 525 So.2d 1048, 1049 (La.1988); *Pace v. Zilka*, 484 So.2d 771 (La.App. 1st Cir.), *writ denied*, 488 So.2d 691 (La.1986); *Mecom v. Mobil Oil Corp.*, 299 So.2d 380, 386 (La.App. 3d Cir.), *writ denied*, 302 So.2d 308 (La.1974). "Formal allegations without substance should be closely scrutinized to determine if they truly do reveal genuine issues of fact." *Brown*, 172 So.2d at 710; *Sally Beauty Co. v. Barney*, 442 So.2d 820, 822 (La.App. 4th Cir.1983).
>
> A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. *Penalber v. Blount*, 550 So.2d 577, 583 (La.1989). "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *South Louisiana Bank v. Williams*, 591 So.2d 375, 377 (La.App. 3d Cir.1991), *writs denied*, 596 So.2d 211 (La.1992). Simply put, a "material" fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. *Sassone v. Elder*, 626 So.2d 345, 352 (La.1993); *Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Co.*, 427 So.2d 1152, 1153-54 (La.1983) (collecting cases); *McCoy v. Physicians & Surgeons Hospital, Inc.*, 452 So.2d 308, 310 (La.App. 2d Cir.), *writ denied*, 457 So.2d

1194 (La.1984) (noting that "[s]ummary judgment may not be used as a substitute for trial").

*Id*. at 805-06 (quoting *Smith v. Our Lady of the Lake Hosp., Inc*., 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751).

Pursuant to La.R.S. 23:1032,[5] an employee's exclusive remedy against his employer or a co-employee for injuries sustained in the course and scope of his employment are limited to that provided in the Louisiana Workers' Compensation Act. The jurisprudence is replete with decisions on the issue of course and scope, and it is well established that the general rule is that an employee who is traveling to or from his work is not considered to be within the course and scope of his employment. *See McLin v. Indus. Specialty Contractors, Inc*., 02-1539 (La. 7/2/03), 851 So.2d 1135. This rule, which has come to be known as the "going-and-coming rule," is subject to several jurisprudentially established exceptions.[6]

---

[5]Louisiana Revised Statutes 23:1032 provides as follows:

> A. (1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease.
>
> . . . .
>
> C. The immunity from civil liability provided by this Section shall not extend to:
>
> (1) Any officer, director, stockholder, partner, or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment[.]

[6]The supreme court in *McLin*, at 1140, n.1, listed the jurisprudentially created exceptions to the going-and-coming rule as follows:

> (1) If the accident happened on the employer's premises;

6

Mr. Mackmer asserts that the application of the going-and-coming rule in this case "defeats essential elements of [Lexington's] affirmative defense of immunity, as it dictates [Mr. Angelle] was not in the course and scope of his employment at the time of the wreck." On the contrary, Lexington maintains that "the facts of this case fall squarely within the exceptions.

Following a hearing, the trial court concluded that there was "ample evidence that [Mr. Angelle and Mr. Mackmer] were on their way to work." In its reasoning, the trial court took "judicial notice [there is] evidence that the work site was in DeQuincy[,] and there was also evidence they were staying, while working in DeQuincy, . . . in Sulphur." Further, the trial court stated that "DeQuincy is north of Sulphur where the accident happened while northbound on [Highway] 27 from Sulphur in the direction to DeQuincy." However, based upon our de novo

---

(2) If the employee was deemed to be on a specific mission for the employer, such as making a trip in the interest of his employer's business or pursuant to his employer's order;

(3) If the employer had interested himself in the transportation of the employee as an incident to the employment agreement either by contractually providing transportation or reimbursing the employee for his travel expenses;

(4) If the employee was doing work for his employer under the circumstances where the employer's consent could be fairly implied;

(5) If the employee was hurt while traveling to and from one work site to another;

(6) If the employee was injured in an area immediately adjacent to his place of employment and that area contained a distinct travel risk to the employee (the "threshold doctrine"); and

(7) If the operation of a motor vehicle was the performance of one of the duties of the employment of the employee.

*See Yates v. Naylor Indus. Services*, 569 So.2d 616 (La.App. 2 Cir.1990), *writ denied*, 572 So.2d 92 (La.1991) (citing *Michaleski v. Western Preferred Casualty Company*, 472 So.2d 18, 20 (La.1985)); *Hughes v. Gearhart Industries, Inc.*, 552 So.2d 717, 719 (La.App. 1 Cir.1989), *writ denied*, 556 So.2d 1280 (La.1990); *Justice v. Sylvester*, 499 So.2d 590, 592-93 (La.App. 5 Cir.1986), *writ denied*, 503 So.2d 491 (La.1987); *Smith v. A.I.U. Insurance Company*, 457 So.2d 868, 869 (La.App. 3 Cir.1984).

review of the evidence, although the trial court's conclusion that "they were on their way to work" may have been logical, it was not established by the evidence.

The facts that were established by the evidence are that the four men who were riding in the vehicle on the morning of the accident, Mr. Mackmer, Mr. Angelle, and Timothy and Dustin Bass, were all employed by Moncla. Mr. Mackmer was the supervisor of the Moncla crew, which was working on a job called the "Aminex job" in DeQuincy, Louisiana. Because of the duration of the job, the crew was provided rooms by Moncla at a hotel in Sulphur, Louisiana, where they returned after each work day. These facts are undisputed.

Also undisputed is that on the day of the accident, the four men left the hotel in Sulphur, in a vehicle owned by Moncla, and provided to Mr. Mackmer for his use. When the men left the hotel, Mr. Angelle was driving the vehicle, but the evidence fails to establish why he was the driver. Mr. Angelle traveled northbound on Highway 27, and the accident happened on this route, between Sulphur and DeQuincy.

In brief, Mr. Mackmer argues that "[t]he missing evidence of where the crew members were headed at the time of the accident is critical, as [Moncla's] crew members stated they often stopped to eat or to perform personal errands with the truck and were not compensated for that time." He argues that there is nothing "in evidence establishing the purpose and destination of the trip[,]" and that there was no evidence "that the men were on their way to work at the time of the wreck."

The only persons who could potentially confirm where the crew was headed when the accident occurred were the four occupants of the vehicle. Mr. Angelle died on the day of the collision. Mr. Mackmer sustained severe injuries and testified that he has no memory of the day the wreck occurred. Lastly, Dustin and Timothy Bass supplied affidavits; however, their affidavits do not confirm, deny,

8

or establish where they were going or what they were doing when the accident happened. According to their affidavits, the "crew on many occasions would stop on the way to the job site to eat breakfast, to shop for personal items, or to run other personal errands." Both affiants aver that on the day of the accident "[a]fter the crew left the hotel, they eventually proceeded to Highway 27 and headed northbound when the accident at issue occurred." Consequently, we agree with Mr. Mackmer that this is a "threshold fact" that is not established by either party. This is a disputed question of material fact.

Finally, in brief, both parties discussed at length whether Moncla paid Mr. Angelle's travel expenses and a per diem allowance. Such evidence is discussed for the purpose of establishing whether the facts trigger a jurisprudential exception to the going-and-coming rule. Mr. Mackmer argues that the payroll records indicate that on the day of the wreck, Mr. Angelle was paid "travel time." However, according to the deposition of Cain Moncla, he personally wrote that notation in the payroll records after Mr. Angelle's death for the purpose of financially assisting the Angelle family. Mr. Mackmer argues that this payment "was a gift to provide financial assistance to [Mr.] Angelle's family in light of [his] death[,]" and, therefore, Moncla's payment of Mr. Angelle's "'travel pay' was not connected to travel." On the other hand, Lexington contends that Mr. Angelle was "driving a company vehicle and being paid for his travel time." This is a disputed question of material fact.

Mr. Mackmer also argues that according to the testimony of Leon Moncla, Moncla's payment of a per diem amount to Mr. Angelle was not based upon the location or distance of the job. Rather, Leon Moncla stated that Moncla paid a per diem amount for certain work requiring "a job ticket." He explained that a "ticketed" job was one in which a Moncla employee performed work for an

9

operator of another company, wherein the operator would provide a work-order ticket. He further stated that the job in DeQuincy was not a "ticketed" job. Lexington counters, stating that on the day of the accident, transportation for the crew was provided by Moncla, the crew was "being paid travel that started the moment they left their hotel, and [that they] were entitled to a per diem." This is a disputed question of material fact.

Based upon the evidence, Mr. Mackmer contends that he has established that the going-and-coming rule applies in this case and that Lexington has failed to establish the applicability of an exception to the rule. For the reasons set forth above, we find that there are genuine issues of material fact relative to the purpose of travel and destination of the crew when the accident happened. Additionally, we find that genuine issues of material fact remain as to whether Moncla was compensating Mr. Angelle by paying his travel expenses and a per diem. Therefore, given the factual disputes that remain, it has neither been established that the going-and-coming rule applies in this case, nor has it been established that an exception to the rule applies in this case.

Considering the record before us in the instant matter, we find that there remain disputed issues of material fact that are germane to the issue of whether or not Mr. Angelle was in the course and scope of his employment with Moncla when the accident occurred. Since these facts are critical to Lexington's affirmative defense of tort immunity and Mr. Mackmer's entitlement, vel non, to recovery, they are "material" facts which preclude the grant of summary judgment. For the same reasons, Mr. Mackmer is likewise not entitled to summary judgment in his favor on the issue of liability.

## DECREE

For the foregoing reasons, we reverse the trial court's grant of summary judgment in favor of Defendants, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and Lexington Insurance Company; we affirm the trial court's denial of Keith William Mackmer's motion for partial summary judgment; and, we remand the matter to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed equally between the parties.

**REVERSED IN PART;**
**AFFIRMED IN PART;**
**AND REMANDED.**